IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN LUIS GARCIA,

      Plaintiff,

      vs.                                                                  Civ. No. 16-1398 KK

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security,**

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12) filed May 5, 2017, in support of Plaintiff John Luis Garcia's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits. On July 26, 2017, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). (Doc. 20.) The Commissioner filed a Response in opposition on September 20, 2017 (Doc. 22), and Plaintiff filed a Reply on October 9, 2017. (Doc. 23.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 5, 7, 8.)

## I. Background and Procedural Record

Claimant John Luis Garcia ("Mr. Garcia") alleges that he became disabled on July 7, 2012, at the age of thirty-seven because of herniated discs, bulging discs, degenerative disc disease, chronic pain in both knees, chronic pain in both elbows, and chronic migraines. (Tr. 163, 174.[3]) Mr. Garcia completed one year of college, and owned a commercial signs and vehicle decal business. (Tr. 166-67, 175, 237.) Mr. Garcia reported he stopped working due to his medical conditions. (Tr. 174.)

On July 25, 2012, Mr. Garcia protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* (Tr. 135-38, 163.) Mr. Garcia's application was initially denied on October 9, 2012. (Tr. 64, 65-72, 85-88.) It was denied again at reconsideration on June 25, 2013. (Tr. 73-83, 84, 90-94.) On August 28, 2013, Mr. Garcia requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 95.) ALJ Michelle K. Lindsay conducted a hearing on February 13, 2015. (Tr. 31-63.) Mr. Garcia appeared in person at the hearing without representation.[4] (*Id.*) The ALJ took testimony from Mr. Garcia (Tr. 36-52, 58-62), and an impartial vocational expert ("VE"), Thomas Greiner (Tr. 53-58). On June 23, 2015, the ALJ issued an unfavorable decision. (Tr. 12-25.) On October 21, 2016, the Appeals Council issued its decision denying Mr. Garcia's request for review and upholding the ALJ's final decision. (Tr. 1-5.) On December 23, 2016, Mr. Garcia timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 12) that was lodged with the Court on May 5, 2017.

[4] Mr. Garcia is represented in these proceedings by Attorney Michael Armstrong. (Tr. 32.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.     Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Garcia was not disabled at step five of the sequential evaluation. (Tr. 23-25.) Specifically, the ALJ determined that Mr. Garcia met the insured status requirements of the Social Security Act through June 30, 2014,[6] and that Mr. Garcia had not engaged in substantial gainful activity from his alleged onset date of July 7, 2012, through his date last insured of June 30, 2014. (Tr. 17.) She found that Mr. Garcia had severe impairments of degenerative disc disease of the lumbar spine, bilateral chondromalacia patella, fibromyalgia, and migraine headaches. (*Id.*) The ALJ, however, determined that Mr. Garcia's impairments did not meet or equal in severity any of the listings described in Appendix 1 of the regulations. (Tr. 19.) As a result, the ALJ proceeded to step four and found that Mr. Garcia had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that

---

[6] To receive Title II benefits, a claimant must demonstrate disability prior to his date of last insured. *See Potter v. Sec'y of Health & Human Servs*., 905 F.2d 1346, 1347 (10th Cir. 1990).

he could only occasionally balance, stoop, crouch, crawl, kneel, and climb stairs and ramps; he could never climb ladders, ropes, or scaffolds; and he needed to avoid unprotected heights.

(Tr. 19.) The ALJ further concluded at step four that Mr. Garcia was unable to perform any past relevant work. (Tr. 23.) The ALJ determined at step five based on Mr. Garcia's age, education, work experience, RFC, and the testimony of the VE, that there were jobs existing in significant numbers in the national economy that Mr. Garcia could perform. (Tr. 23-24.) As a result, the ALJ determined that Mr. Garcia was not disabled. (Tr. 25.)

In support of his Motion, Mr. Garcia argues that (1) treating physician Sharon Mullis, D.O.'s medical source statements submitted to the Appeals Council undercut the ALJ's RFC determination; (2) the ALJ failed to properly consider whether Mr. Garcia's fibromyalgia and migraine headaches equaled the requirements of a listing; (3) the ALJ failed to properly evaluate Mr. Garcia's statements regarding the intensity, persistence and limiting effects of his symptoms pursuant to SSR 16-3p; and (4) the ALJ improperly rejected certain portions of the State agency nonexamining medical consultant opinion evidence. (Doc. 20 at 8-18.) For the reasons discussed below, the Court finds that the ALJ improperly rejected certain portions of the State agency nonexamining medical consultant opinion evidence and that, coupled with treating physician Sharon Mullis, D.O.'s functional assessments submitted to the Appeals Council,[7] this case requires remand for rehearing.

---

[7] The Appeals Council made Dr. Mullis's assessments a part of the record. (Tr. 5.) *See Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006) (finding that where the Appeals Council considered new records they are "part of the administrative record to be considered [by this court] when evaluating [the ALJ's] decision for substantial evidence.") (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1996))).

A.  **Medical Opinion Evidence**

1.  **State Agency Nonexamining Medical Consultant Mark A. Werner, M.D.**

On October 4, 2012, at the initial level of Mr. Garcia's disability claim, State agency nonexamining medical consultant Mark A. Werner, M.D., reviewed Mr. Garcia's medical records. (Tr. 68-70.) Based on his review, Dr. Werner prepared an RFC assessment of Mr. Garcia's ability to do work-related physical activities. (*Id.*) He assessed that Mr. Garcia could occasionally lift and/or carry 20 lbs.; could frequently lift and/or carry 10 lbs.; could stand and/or walk 2 hours in an 8-hour workday; could sit for about 6 hours in an 8-hour workday; and had unlimited push and/or pull for lift and/or carry, other than shown. (Tr. 69.) Dr. Werner explained that his conclusions about Mr. Garcia's exertional limitations were based on Mr. Garcia's herniated discs and bilateral knee pain. (*Id.*) Dr. Werner also assessed postural limitations to include only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (*Id.*) In the "Additional Explanation" portion of Dr. Werner's assessment, Dr. Werner summarized Mr. Garcia's subjective complaints,[8] and Mr. Garcia's 2012 medical records.[9] (Tr. 70.) Dr. Werner concluded that Mr. Garcia was "[l]imited to light work with 2 hr max

---

[8] Dr. Werner summarized that Mr. Garcia alleged "2 herniated discs, migraines, bilat knee and elbow pain. AOD 7/7/12, T2 initial, DLI in future." (Tr. 70.) He also noted that Mr. Garcia reported he can "walk 2-5 min and lift 10#. Occ. drives. Minimal HH chores." (*Id.*)

[9] Dr. Werner summarized Orthopedist Jose R. Reyna, M.D.'s January 9, 2012, treatment note, including that (1) Dr. Reyna noted Mr. Garcia's subjective complaints of increasing low back pain the last two years, and that it had been treated with injections and PT without much improvement; (2) physical exam demonstrated normal gait, toe and heel walk, lumbar flexion 10% of normal, normal reflexes, normal sensation, motor strength 5/5 throughout, and SLRs cause back pain; (3) MRI shows moderate disc desiccation with reduced height L4-5 and L5-S1, moderately large central disc herniation L4-5, smaller at L5-S1; (4) fusion not an option due to young age and relatively high level of function; and (5) discotomy is an option. (Tr. 70, 279-80.) Dr. Werner also summarized Orthopedist Matthew Patton, M.D.'s June 19, 2012, treatment note regarding evaluation of Mr. Garcia's bilateral elbow pain; Orthopedist Samuel Tabet, M.D.'s July 17 2012, treatment note regarding evaluation of Mr. Garcia's bilateral knee pain; Primary Care Sharon Mullis, D.O.'s August 20, 2012, treatment note regarding treatment of Mr. Garcia's back pain with spasms; and Dr. Mullis's treatment note for Mr. Garcia's bilateral knee pain and diagnosis of Baker's cyst behind the left knee. (Tr. 70, 267-69, 270-72, 392-99, 399-404.)

stand/walk due to herniated disc and bilat knee PF chondromalacia. Migraines are not listing level. Elbow pain due to epicondylitis and expected to resolve with treatment." (*Id.*)

The ALJ accorded "great weight" to Dr. Werner's opinion. (Tr. 22.) In so doing, the ALJ explained that

> [t]his opinion is balanced, objective, and consistent with the evidence of record as a whole. Although this expert did not have an opportunity to examine or treat the claimant, the report clearly reflects a thorough review of the record and is supportable.

(Tr. 22-23.)

### 2. State Agency Nonexamining Medical Consultant Colleen Ryan, M.D.

On June 25, 2013, at the reconsideration level of Mr. Garcia's disability claim, State agency nonexamining medical consultant Colleen Ryan, M.D., reviewed Mr. Garcia's medical records and prepared an RFC assessment of Mr. Garcia's ability to do work-related physical activities. (Tr. 79-82.) Based on her review, Dr. Ryan assessed that Mr. Garcia could occasionally lift and/or carry 20 lbs.; could frequently lift and/or carry 10 lbs.; could stand and/or walk 4 hours in an 8-hour workday; could sit for about 6 hours in an 8-hour workday; and had unlimited push and/or pull for lift and/or carry, other than shown. (Tr. 79-80.) Dr. Ryan explained that her conclusions regarding Mr. Garcia's exertional limitations were based on Mr. Garcia's herniated discs and bilateral knee pain. (*Id.*) Dr. Ryan also assessed postural limitations to include only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (Tr. 80.) In the "Additional Explanation" portion of Dr. Ryan's assessment, Dr. Ryan repeated verbatim Dr. Werner's previously summarized explanation regarding Mr. Garcia's subjective complaints, and Mr. Garcia's 2012 medical records.[10] (Tr. 70.) Dr. Ryan also

---

[10] *See* fns. 8 and 9, *supra*.

8

included a summary of Mr. Garcia's medical records and function report from September 12, 2012 through May 30, 2013.[11] Dr. Ryan concluded that Mr. Garcia's function was "improved with [physical therapy] for his elbows, knees, and back; the prior RFC dated 10/4/2012 is hereby affirmed as written." (Tr. 81.)

The ALJ accorded Dr. Ryan's opinion considerable weight. (Tr. 23.) However, the ALJ stated that Dr. Ryan's opined 4 hour standing and/or walking limitation was not supported by the objective evidence of record.[12] (*Id.*)

### 3. Treating Physician Sharon Mullis, D.O.[13]

On March 20, 2011, Mr. Garcia established care with Sharon Mullis, D.O. (Tr. 344-53.) Mr. Garcia reported a history of degenerative disc disease in the lumbar spine,[14] right shoulder surgery, and a history of migraines. (Tr. 349.) Dr. Mullis noted that Mr. Garcia was initially standing due to back discomfort, and by the end of the exam again required standing for the same reason. (Tr. 351.) Mr. Garcia had normal range of motion, but exhibited mild tenderness to

---

[11] Dr. Ryan reviewed records from 9/24/2012 (physical therapy for elbow pain); 10/10/12 (physical therapy for bilateral knee pain); 11/13/2012 (physical therapy for bilateral knee pain); 12/[15]/2012 (Dr. Mullis's treatment note regarding recent spine block and requested referral for trigger point injections); 02/06/2013 (Dr. Mullis's treatment note wherein Mr. Garcia reported left knee cyst gets "aggravated" with walking and requested ortho referral); 02/11/2013 (physical therapy for back pain); 03/11/2013 (physical therapy for back pain); 03/27/2013 (physical therapy for back pain; pt. reported continued pain and tightness in upper thoracic spine and requested discharge from PT); 05/30/2013 (Mr. Garcia reported he cares for kids with wife's help; wife sometimes helps him put on his shoes; wife cooks; he helps with laundry; he waters the yard for 45-60 minutes weekly; he is able to drive, but wife drives on his bad days; wife does all the shopping; he is unable to lift over 5#; can't squat; hurts to bend; can only stand for short times; can't reach far; can't kneel or climb stairs; walking and sitting is limited; able to walk 10 minutes before stopping to rest). (Tr. 81, 208-15, 432-38, 440-41, 467, 476-77, 480-81, 488, 493, 517-34.)

[12] The ALJ further explained that both DDS experts had failed to adequately consider how Mr. Garcia's limitations affected his ability to work at unprotected heights. (Tr. 23.)

[13] Treating physician Sharon Mullis's functional assessments were provided to the Appeals Council on September 22, 2015. (Tr. 606.) The ALJ did not have these assessments when she made her determination.

[14] Mr. Garcia provided Dr. Mullis with a 2010 MRI demonstrating degeneration of the disc at L5-S1 with generalized bulging and questionable involvement into the right S1 nerve root; also shows a central protrusion of disc material at L4-L5 which deforms the thecal sac and probably involves the right L5 nerve root, facet and ligamentous hypertrophy and contributes to borderline spinal stenosis. (Tr. 349.)

9

palpation in lower spine paraspinal muscles. (Tr. 352.) Dr. Mullis assessed, *inter alia*, lumbosacral degenerative joint disease. (*Id.*) She prescribed Oxycodone and refilled Mr. Garcia's prescription for Cyclobenzaprine. (*Id.*)

Mr. Garcia saw Dr. Mullis almost monthly throughout 2011 for ongoing pain medication management,[15] referrals for diagnostic and specialized evaluation, and referrals for physical therapy. (Tr. 322-27, 327-33, 333-38, 339-44, 371-76, 376-83.) Mr. Garcia saw Dr. Mullis six times in 2012, once in 2013, and twice in 2014, for continued pain medication management, trigger point injections, diagnostic and specialized care referrals, and physical therapy referrals. (Tr. 363-71, 392-99, 399-404, 405-10, 432-38, 438-39, 439-44, 570-83, 584-88.)

On August 20, 2015, Dr. Mullis completed a Medical Assessment of Ability To Do Work-Related Activities (Physical) on Mr. Garcia's behalf, and considered Mr. Garcia's medical history and the chronicity of findings from 2012 to the current examination. (Tr. 607.) Dr. Mullis assessed that Mr. Garcia (1) could not maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently because of pain and fatigue; (2) could occasionally lift less than 5 lbs.;[16] (3) could stand and/or walk for less than 2 hrs. in an 8-hour workday;[17] (4) must periodically alternate sitting and standing to relieve pain or discomfort;[18] (5) has limited ability to push and/or pull with his upper and lower extremities;[19] (6) has limited reaching in all directions and cannot do handling (gross manipulation) with right

---

[15] Mr. Garcia also reported bilateral knee and elbow pain during this time. (Tr. 373, 379, 385.)

[16] "Patient reports pain in lower back when lifting more than 5 lbs., also knee pain worsens." (Tr. 607.)

[17] "Patient develops worsening of lower back pain; has Grade III chondromalacia patella bilateral knee." (Tr. 607.)

[18] "Patient reports having to alter position constantly during the day or low back pain worsens; also bilateral knee pain worsens." (Tr. 607.)

[19] "Due to worsening of lower back pain and bilateral knee pain, cannot pull repetitively if greater than 5 lbs." (Tr. 607.)

or left hands;[20] (7) can occasionally kneel, but never stoop, crouch or crawl;[21] and (8) that nonphysical activities are affected by fatigue and sleep disturbances related to Mr. Garcia's pain. (*Id.*)

Dr. Mullis also completed a Medical Assessment of Ability To Do Work-Related Activities (Non-Physical) and considered Mr. Garcia's medical history and the chronicity of findings from 2012 to the current examination. (Tr. 608.) Therein, Dr. Mullis assessed that Mr. Garcia (1) suffers from a pain producing impairment, injury or sickness; (2) that his pain is severe; (3) that he suffers from fatigue as a result of his impairments; and (4) that he has to rest or lie down at regular intervals because of his pain and/or fatigue. (*Id.*) She further assessed that Mr. Garcia had *slight* limitations in his ability to (1) maintain regular attendance and be punctual within customary tolerance; (2) sustain an ordinary routine without special supervision; and (3) work in coordination with/or proximity to others without being distracted by them. (*Id.*) She assessed Mr. Garcia had *moderate* limitations in his ability to (1) maintain attention and concentration for extended periods (*i.e.,* 2-hour segments); (2) perform activities within a schedule; and (3) make simple work-related decisions. (*Id.*) She further assessed that Mr. Garcia had *marked* limitations in his ability to (1) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently (*i.e.,* 2-hour segments); and (2) complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Mullis commented that "[p]atient relates feels has decreased rate of cognitive processing due to 'brain fog.'" (*Id.*)

---

[20] "Due to chronic low back pain." (Tr. 607.)

[21] Due to knee and back pain. (Tr. 607.)

11

### B. The ALJ Failed to Properly Explain Her Rejection of Dr. Werner's and Dr. Ryan's Standing and/or Walking Limitation

Mr. Garcia argues that the ALJ's explanation for the rejection of the State agency medical consultants' "opined limitation for standing and/or walking" is not sufficiently explicit. (Doc. 20 at 17.) Mr. Garcia further argues that although supportability is a facially valid reason for rejecting a medical opinion, a facially valid reason without an explanation or analysis is simply too vague to effectively and legitimately support the rejection of a medical opinion. (*Id.*) The Commissioner contends that even if the Court were to determine that the ALJ's explanation were insufficient, the VE identified 430,000 jobs in the national economy that Mr. Garcia could do even if limited to sedentary work. (Doc. 22 at 15-16.) As such, the Commissioner contends, any error in the ALJ's explanation is harmless. (*Id.*) The Court does not agree.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215. Specifically, when assessing a claimant's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183 at *5.[22] "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215 (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[23] An ALJ need not articulate every factor; however, the ALJ's decision must be "sufficiently specific to make clear

---

[22] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5845, 5867, 5869.

[23] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. § 416.927(c)(2)-(6) (evaluating opinion evidence for claims filed before March 27, 2017).

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183 at *5 (emphasis added); *see Keyes-Zachary v Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii))).

The Court finds that the ALJ's one conclusory reason, without more, for rejecting the standing and/or walking limitation is insufficient. As an initial matter, the ALJ accorded great weight to Dr. Werner's opinion yet offered no explanation at all for rejecting his assessment that Mr. Garcia was limited to light work with a two-hour maximum of standing and/or walking due to herniated discs and bilateral knee pain. (Tr. 22-23.) The ALJ then accorded considerable weight to Dr. Ryan's opinion, wherein Dr. Ryan limited Mr. Garcia to four hours of standing and/or walking in an eight-hour workday, but then concluded, without more, that this opined limitation "was not supported by the objective evidence of record." (Tr. 23.) Although the ALJ summarized Mr. Garcia's medical records elsewhere in her determination, it is not clear to the Court what objective evidence the ALJ relied on to reject the standing and/or walking limitations the medical consultants assessed, particularly where the only medical opinions before the ALJ were those of Dr. Werner and Dr. Ryan. "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir 2007); *see also Grogan*, 399 F.3d at 1262 (the ALJ must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects).

The ALJ's error is not harmless. The Commissioner cites a number of cases for the premise that because the ALJ elicited VE testimony about available jobs in response to the ALJ's alternate hypothetical involving sedentary work, which would presumably accommodate Mr. Garcia's standing and/or walking limitation, that any error is harmless. (Doc. 22 at 15-16.) However, the cases cited are distinguishable from the facts here. In *Berna v. Chater*, 101 F.3d 631 (10th Cir. 1996), the ALJ determined that the claimant was not disabled at step four, but nonetheless made alternative step five findings based on elicited and adopted VE testimony. *Berna*, 101 F.3d at 633. The claimant challenged only the ALJ's step four findings, but offered no challenge to the ALJ's alternate step five findings. *Id.* The Tenth Circuit found that it need not reach the merits of claimant's step four challenge because the claimant had waived review of the ALJ's step five findings which provided a basis for the denial of benefits. *Id.* Similarly, in *Wilkerson v. Chater*, 106 F.3d 414 (10th Cir. 1997) (unpublished table decision), the claimant challenged the ALJ's step four findings, but failed to challenge the magistrate judge's step five determination that "even if the ALJ's step-four evaluation was insufficient, [the ALJ] elicited testimony from the vocational expert which would support a step-five determination of no disability." *Id.* The Tenth Circuit noted that the necessary evidence and findings to support the alternate step five determination were present in the record and in the body of the ALJ's decision, and therefore it did not reach the merits of claimant's step four challenge. *Id.* In *Lane v. Colvin*, 643 F. App'x 766 (10th Cir. 2016) (unpublished), the issue was whether the ALJ's omission in the RFC assessment and hypothetical to the VE related to certain social interaction limitations was harmless error in light of the jobs the VE identified and the ALJ adopted. *Lane*, 643 F App'x at 769-770. Similarly in *Bainbridge v. Colvin*, 618 F. App'x 384 (10th Cir. 2015) (unpublished), the issue was whether the ALJ's omission in the RFC assessment and

hypothetical to the VE related to certain manipulative limitations was harmless error in light of the jobs the VE identified and the ALJ adopted. *Bainbridge*, 618 F. App'x at 391-92.

In the present case, the ALJ's failure to include Dr. Werner's or Dr. Ryan's standing and/or walking limitation in her RFC assessment or hypothetical to the VE is clearly *not* harmless error in light of the jobs the VE identified because they all require light exertional capacity, which exceeds the standing and/or walking limitations Dr. Werner and Dr. Ryan assessed.[24] (Tr. 24.) Additionally, Mr. Garcia has not waived review of the ALJ's step five findings; the ALJ did not make alternate findings at step five; and the ALJ did not adopt the VE's elicited testimony, or determine the consistency of the VE's elicited testimony with the DOT, based on her alternate hypothetical that limited Mr. Garcia to sedentary work.[25] And the Court will not assume facts that are not in the record. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should [be] evaluated based solely on the reasons stated in the decision.").

Moreover, the Court is not persuaded that the record supports the necessary evidence and findings to support alternate step five findings based on the VE's elicited testimony. Here, the ALJ did not have the benefit of Mr. Garcia's treating physician's functional assessments, which have been made part of the record and are now before the Court. (Tr. 5.) The Court finds that Dr. Mullis's assessments undercut the ALJ's finding that Mr. Garcia can perform light work, and may preclude Mr. Garcia from sedentary work as well. In particular, Dr. Mullis's assessment supports Dr. Werner's and Dr. Ryan's opinions that Mr. Garcia's ability to walk and/or stand in

---

[24] "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6.

[25] The ALJ provided an alternate hypothetical to the VE at the Administrative Hearing in which she limited Mr. Garcia to sedentary exertional activity, with occasional climbing of stairs and ramps, occasional balancing, stooping, crouching, kneeling and crawling, and avoiding unprotected heights. (Tr. 54, 56.) The ALJ identified three jobs in significant numbers in the national economy that Mr. Garcia could perform based on the alternate hypothetical; *i.e.*, egg processor, convex grinder, and rotor assembler. (Tr. 56.)

15

an eight-hour workday is limited. (Tr. 69, 79, 607.) Additionally, Dr. Mullis assessed, *inter alia*, that Mr. Garcia must alternate between sitting and standing due to chronic low back and knee pain, an additional limitation that, according to the VE's elicited testimony, would eliminate both light and sedentary jobs in the competitive market that Mr. Garcia could perform. (Tr. 57.) The Commissioner argues that Dr. Mullis's assessments are severe and not supported by her treatment notes because she often noted normal exam findings. (Doc. 22 at 18-19.) The Court's review of Dr. Mullis's treatment notes, however, demonstrates that Dr. Mullis consistently recorded Mr. Garcia's ongoing complaints of pain; noted positive physical exam findings for tenderness, tightness and pain; managed Mr. Garcia's medication for chronic pain; administered trigger point injections for chronic pain; and referred Mr. Garcia for diagnostic findings, specialized care and physical therapy. (Tr. 322-27, 327-33, 333-38, 339-44, 344-53, 363-71, 371-76, 376-83, 392-99, 399-404, 432-38, 440-45, 570-83, 584-88.) Thus, the Court does not agree with the Commissioner's argument that Dr. Mullis's opinion should be rejected, particularly as it concerns Dr. Mullis's functional assessments that are consistent with Dr. Werner's and Dr. Ryan's opinions and supported by her treatment notes. Moreover, the Court is mindful that Dr. Mullis is a treating physician and that her opinion, even if not entitled to controlling weight, is entitled to deference. *Krauser v. Astrue*, 638 F.3d 1324, 1330-331 (10th Cir. 2011).

For the foregoing reasons, the Court finds that the ALJ failed to explain and discuss why she rejected Dr. Werner's assessment that Mr. Garcia could only walk and/or stand for two hours in an eight-hour workday, and failed to sufficiently explain and discuss why she rejected Dr. Ryan's assessment that Mr. Garcia could only walk and/or stand for four hours in an eight-hour workday. The Court further finds that the ALJ's failure to do so is not harmless error. The

ALJ, therefore, failed to apply the correct legal standard in evaluating the medical opinion evidence and the ALJ's findings are not supported by substantial evidence. As such, this case requires remand.

### C. Remaining Issues

The Court will not address Mr. Garcia's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, Mr. Garcia's Motion to Reverse and Remand For a Rehearing With Supporting Memorandum (Doc. 20) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**